# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIMYATTA BILLINGSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-13-777-HE |
| | ) | |
| THE STATE OF OKLAHOMA, ex rel. | ) | |
| DEPARTMENT OF HUMAN SERVICES, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Kimyatta Billingsley filed this case against the State of Oklahoma, "ex rel." the Department of Human Services ("DHS"), and Linda Voth, in her individual capacity, asserting claims pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. Plaintiff alleges that she was passed over for a promotion because of her race and was retaliated against for filing discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and the Oklahoma Office of Civil Rights Enforcement ("OCRE"). Defendant Voth has moved to dismiss the sole claim against her, a § 1983 First Amendment retaliation claim, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has responded, and the motion is at issue.

Rule 12(b)(6) authorizes a court to dismiss a claim when a party fails "to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and construed in the light most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir.

2010). Unsupported, conclusory allegations, however, need not be accepted as true. *See* Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011). Further, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The question is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.[1]

## Background

Plaintiff is an African-American female who began working at DHS in 1990. According to the Second Amended Complaint [Doc. #25] (the "complaint"), in November 2012 plaintiff applied for one of nine available "Administrative Assistant II positions." She alleges that she and two other African-Americans were not selected for those positions, despite their having more seniority than the applicants who were ultimately selected. The complaint alleges plaintiff filed charges with the EEOC on January 16, 2013, and with OCRE on February 1, 2013, alleging race discrimination.

Plaintiff asserts that defendant Voth, the DHS District Director, retaliated against her for filing the discrimination charges. The complaint alleges that, when plaintiff went on work-related errands, she was required to keep logs of her mileage and departure and arrival

---

[1]Plaintiff asserts that motions to dismiss are "disfavored" and "rarely granted," relying on various pre-Twombly cases making that statement. Such expressions appear to be inconsistent with the dismissal standard articulated in Twombly.

2

times and that such logs were not required of other employees. It also alleges that plaintiff's direct supervisor is required to check the accuracy of the mileage logs, which he does not do for other employees. Finally, plaintiff alleges that her reimbursement for the travel is delayed longer than for other employees. She contends that these actions constitute a violation of her First Amendment right to free speech because the travel policies were implemented in retaliation for her filing the discrimination charges.

## Discussion

Defendant Voth argues that the First Amendment claim against her should be dismissed because plaintiff's speech was not a matter of public concern and because plaintiff did not suffer an adverse employment action. Voth further argues that she is entitled to qualified immunity. Plaintiff counters that she has pled sufficient facts to establish the elements of a free speech claim under § 1983, and that qualified immunity does not apply because defendant violated a clearly established constitutional right.

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). In those "certain" circumstances, a public employer may not retaliate against the employee for exercising his or her constitutionally protected free speech rights. Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cnty., 587 F.3d 1223, 1235 (10th Cir. 2009).

In determining whether the speech is constitutionally protected, the threshold question is whether a plaintiff is speaking as a citizen on a matter of public concern. Borough of

3

Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488, 2493 (2011); Eisenhour v. Weber Cnty., 744 F.3d 1220, 1228 (10th Cir. 2014). That question is essentially whether the communication relates to a matter of public concern, which is protected, or a matter of purely personal interest, which is not. Eisenhour, 744 F.3d at 1228.

"[W]hether an employee's speech addresses a matter of public concern must be determined by the 'content, form, and context of a given statement, as revealed by the whole record.'" Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988) (quoting Connick v. Myers, 461 U.S. 138, 147-48 (1983)). "Speech involves a public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose[] any evidence of corruption, impropriety, or other malfeasance within a governmental entity." Eisenhour, 744 F.3d at 1228 (alteration in original) (quoting Conaway, 853 F.2d at 796) (internal quotation marks omitted). The court "must consider the speaker's motivation: Was the speech calculated to redress personal grievances or did it have some broader public purpose?" Id. (citing Starrett v. Wadley, 876 F.2d 808, 816 (10th Cir. 1989)).

Even if the public employee speaks as a citizen on a matter of public concern, the speech is not automatically subject to constitutional protection. Borough of Duryea, 131 S. Ct. at 2493. In resolving that question, "[a] district court must balance the First Amendment interests of that employee, speaking as a concerned citizen, with the government's interests in 'promoting the efficiency of the public services it performs through its employees.'" Eisenhour, 744 F.3d at 12271 (quoting Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 568, (1968)). "To conduct this balancing, the district court asks: (1)

4

whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct." *Id.* at 1227-28 (quoting Dixon v. Kirkpatrick, 553 F.3d 1294, 1301-02 (10th Cir. 2009)).

As to the threshold "public concern" inquiry, the question is whether plaintiff's filing of the discrimination charges meets that standard. Plaintiff argues she was exposing discriminatory practices of the government and relies on various cases suggesting that, in certain contexts, discrimination disputes may constitute matters of public concern. However, the speech involved in those cases involved something more than simply filing an EEOC or similar charge. For example, in Charles v. Grief, 522 F.3d 508 (5th Cir. 2008), the plaintiff sent emails to various high-ranking agency officials and to members of the state legislature, objecting to discriminatory practices in the agency and violations of other laws. Similarly, the plaintiff in Eisenhour took her complaints to the news media and those complaints included "not only her employment dispute, but also her complaints about the work of the Judicial Conduct Committee." 744 F.3d at 1228. Here, there are no comparable circumstances alleged. Rather, the complaint alleges only that plaintiff filed EEOC and

OCRE charges to pursue her personal employment claims under the law.[2] Permitting a First Amendment claim to go forward based on these allegations would turn an "everyday employment dispute" into a constitutional violation, a result contrary to the Supreme Court's guidance in Borough of Duryea and Garcetti. *See* Garcetti, 547 U.S at 420 ("[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'") (quoting Connick v. Myers, 461 U.S. 138, 154 (1983)).

As plaintiff has not alleged a basis for concluding she was speaking on a matter of public concern, it is unnecessary to address the Pickering balancing process or whether an adverse employment action is alleged, or to consider whether qualified immunity might be applicable. "If the speech is not a matter of public concern, then the speech is unprotected and inquiry ends." Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir. 2007).

For the reasons stated, defendant Voth's motion to dismiss [Doc. #29] is **GRANTED**, and the First Amendment claim against her is **DISMISSED**. Defendant's motions to file supplemental authority [Doc. Nos. 33 & 34] are **STRICKEN AS MOOT**.

---

[2]*The complaint alleges (para. 27) she complained about discrimination she and other black candidates experienced as to the positions she was applying for, but there is no suggestion she made the complaints other than in connection with pressing her own claim.*

**IT IS SO ORDERED**.

Dated this 1st day of May, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE